UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KEITH HOGLUND,

                Petitioner,

                v.                    CAUSE NO.: 3:16-CV-313-PPS-MGG

SUPERINTENDENT,

                Respondent.

## OPINION AND ORDER

Keith Hoglund was convicted of child molestation by a jury in Wells County

Circuit Court and was sentenced to fifty years in prison. Hoglund says he stands

wrongly convicted and he has filed a habeas corpus petition to vindicate his rights.

### Factual and Procedural Background

In deciding this petition, I must presume the facts set forth by the state courts are

correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. §

2254(e)(1). I have read the trial transcript and find that the Indiana Supreme Court's

summary description of the evidence was accurate but incomplete. Hoglund does not

dispute the Supreme Court's summary of the facts. Here's how the Indiana Supreme

Court described the evidence:

> Keith Hoglund and Teresa Mallott were married in June 1998. At the time,
> Mallott was the mother of a four-year-old son from a prior relationship.
> Two daughters were born to the marriage, A.H. in 1998 and a sister in
> 2001. In June 2002 the family moved from Fort Wayne to a home in Wells
> County. A.H. was four years old at the time. When A.H. was about five
> years old, she told Mallott about an incident in which Hoglund had taken

a shower with her. An upset Mallott confronted Hoglund; he denied the allegation and Mallott at first believed him. In February 2006 a tearful eight-year-old A.H. again told Mallott about possible sexual abuse. This time Mallott reported the incident to a detective with the Wells County sheriff's department. The detective questioned A.H. who told him, among other things, that Hoglund "put stuff on his penis and ha[d] her lick it off." Hoglund was arrested and on May 4, 2006, he was charged with two counts of child molesting as Class A felonies. At trial, then twelve-year-old A.H. testified that Hoglund first began molesting her when she was four years old. Hoglund would cause her to fellate him approximately two or three times per week. And this lasted until after A.H.'s seventh birthday. Hoglund would rub flavored substances onto his penis and occasionally ejaculate into A.H.'s mouth. Hoglund also showed A.H. a pornographic movie depicting oral sex, told her that her mother viewed her with disgust and cared more for her siblings than her, promised to give her money and toys, and told her that she would be "covered in black and blue" and that he would go to jail if she told anyone. After A.H. told Hoglund that she no longer wanted to fellate him, she asked him if he would ever force her younger sister to fellate him, and Hoglund responded, "I don't know, maybe."

The State called as expert witnesses pediatrician Carol Butler, clinical psychologist Amanda Mayle, and mental health counselor Christine Shestak. Each witness had treated or counseled A.H. In varying degrees of specificity, each witness essentially testified that A.H. was "not prone to exaggerate or fantasize" concerning sexual matters.

The jury found Hoglund guilty on both counts of child molesting as Class A felonies. Apparently due to double jeopardy concerns the trial court sentenced Hoglund to a term of fifty years on Count I only.

*Hoglund v. State*, 962 N.E.2d 1230, 1232 (Ind. 2012); ECF 20-9 at 2-3.

As noted above, some important facts were left out of this description of the evidence by the Indiana Supreme Court — one category of facts being favorable to Hoglund, and the other being favorable to the State. The first category relates to the timing of the statements by A.H. about the sexual abuse by her father. The statements by A.H. to her mother, Teresa Mallot, that Hoglund was molesting her were made

shortly after Mallot found out that Hoglund was having an affair. (Tr. 94-98). She was understandably angry upon hearing the news of her husband's infidelity, and she sought a divorce a short time later. (Tr. 114). It was just a few days later that the allegations of sexual abuse of their daughter were made. The defense implied that this timing was suspicious, and that Mallot had a motive to fabricate the charge of molestation.

The second category of evidence not recounted by the Indiana Supreme Court was decidedly not favorable to Hoglund. There was highly incriminating testimony concerning a statement that Hoglund made to the police when he was first questioned by them. (Tr. 149-152). Hoglund described an incident where he was masturbating and his daughter walked in on him just as he was ejaculating. This was Hoglund's explanation of how his daughter knew about ejaculation, not that she learned it from performing fellatio on him. When asked point blank whether he ever had his daughter perform fellatio on him, his answer was an odd one: he offered that perhaps it happened when he had fallen asleep and she did it without him knowing about it. (Tr. 152).

Based on this evidence, Hoglund was convicted by a jury of child molestation and was sentenced to a fifty year term of incarceration. After exhausting his appeals through the Indiana court system, he filed the present motion for habeas corpus under 28 U.S.C. § 2254.

<u>Discussion</u>

Hoglund argues that he is entitled to habeas corpus relief, and his claims can be divided into errors allegedly made by the trial court, on the one hand, and claims of ineffective assistance of counsel, on the other. As to the first category, Hoglund claims 1) that the trial court violated his due process rights by admitting expert testimony that served to vouch for the credibility of the victim; 2) that the trial court violated his right to a jury trial by sentencing him based on aggravating factors that had not been found by a jury; and 3) that the trial court violated his right to a jury trial and his right against self-incrimination by issuing a more severe sentence for Hoglund's assertion of those rights.

As to the second category of alleged error — all of which are claims of ineffective assistance of counsel — Hoglund raises fourteen separate grounds. He alleges that his trial counsel: 1) failed to keep Hoglund informed of the pending trial; 2) failed to conduct an independent investigation; 3) failed to depose or interview any of the State's expert witnesses; 4) failed to procure expert witnesses to contradict the State's expert witnesses; 5) failed to object to the trial court's lack of jurisdiction; 6) failed to object to improper jury instructions; 7) failed to utilize remaining strikes to remove biased jurors; 8) failed to object to duplicate charges; 9) failed to object to leading questions; 10) failed to object to an "evidentiary harpoon"; 11) failed to object when the trial court failed to state a claim upon which relief could be granted; 12) failed to object to testimony on the basis of hearsay and lack of foundation; 13) failed to object to expert testimony that

served to vouch for the victim's credibility; and 14) failed to request a mistrial after the introduction of overt and direct vouching testimony.

Exhaustion and Procedural Default

Before considering the merits of a habeas petition, I must ensure that the Hoglund has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). This involves navigating a byzantine world full of procedural traps for the petitioner. Fall into one, and your case is over. To get to the merits of a case a petitioner must fully and fairly present his federal claims to the state courts. *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). Fair presentment "does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Brevik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (citing *Boyko*, 259 F.3d at 788). It does, however, require "the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis*, 390 F.3d at 1025 (internal quotations and citations omitted). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* at 1025-26. "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Id.* at 1026.

Applying the rules of procedural default to this case, I'll start with his claims of trial error. Hoglund presented the claim that the trial court violated his right to a jury trial by sentencing him based on aggravating factors that had not been found by a jury to the Court of Appeals of Indiana (ECF 20-4 at 27-29) but abandoned the claim when he petitioned for transfer to the Indiana Supreme Court (ECF 20-8). Additionally, Hoglund never presented to any State court the claim that the trial court violated his right to a jury trial and his right against self-incrimination by issuing a more severe sentence for Hoglund's assertion of those rights. Because he did not fully and fairly present these claims through one full round of state court review, he has procedurally defaulted these claims.

Hoglund did present a claim that the trial court erred by admitting expert testimony that served to vouch for the credibility of the victim to the Indiana Supreme Court and Court of Appeals. (ECF 20-4 at 16-26; ECF 20-8 at 11-14.) But Respondent argues that Hoglund based this claim on state evidentiary rules rather than federal law. This is another trap in the habeas corpus process that I referenced above. In determining whether a claim has been fairly presented to the State courts as a federal claim, courts consider:

> 1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation.

*Anderson*, 471 F.3d at 815. Hoglund relied exclusively on State cases and evidentiary rules when presenting this claim to the State courts. Therefore, he did not "alert the state courts to the federal underpinnings of his claim." *Perruquet v. Briley*, 390 F.3d 505, 519 (7th Cir. 2004). Moreover, even though the Indiana Supreme Court's fundamental error analysis (ECF 20-9 at 13) resembles a federal due process analysis, *see Howard v. O'Sullivan*, 185 F.3d 721, 723–24 (7th Cir. 1999), this does not remove the procedural bar, *see Willis v. Aiken*, 8 F.3d 556, 567 (7th Cir. 1993). Nevertheless, because the claim is closely related to one of Hoglund's properly exhausted claims, I will consider whether the trial court's admission of the vouching testimony violated Hoglund's due process right to a fundamentally fair trial. Federal courts may consider claims for habeas relief under certain circumstances even if such claims are procedurally barred. 28 U.S.C. § 2254(b)(2).

As for the claims of ineffective assistance of counsel, although Hoglund raised some of his claims regarding his trial counsel before the Court of Appeals of Indiana, he raised only the following claims before the Indiana Supreme Court: (a) that his trial counsel failed to object to testimony on the basis of hearsay and lack of foundation for a hearsay exception; and (b) that his trial counsel failed to object to expert testimony that served to vouch for the victim's credibility and failed to request a mistrial after the introduction of overt and direct vouching testimony. (ECF 20-18 at 2.) Therefore, I will consider the merits of these claims. However, Hoglund has procedurally defaulted all of his other claims regarding his trial counsel.

Having decided that some of Hoglund's claims are procedurally defaulted, the next question is whether there is any way for Hoglund to avoid the procedural default on those claims. A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008), *cert. denied*, 556 U.S. 1239 (2009). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492 (1986). A habeas petitioner can also overcome a procedural default by establishing that the Court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006). To meet this exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Hoglund does not argue that he was prevented from pursuing the procedurally defaulted claims in State court or that he is actually innocent. He thus cannot overcome procedural default.

<u>Standard of Review</u>

Having worked our way through the procedural thicket that plagues habeas corpus litigation, it is now on to the merits of the claims that survive. But first, some basics about the standards that govern the decision making. Habeas corpus is an important error correction tool that helps to ensure the proper functioning of the

criminal justice system. But the available relief is very limited. "Federal habeas review ... exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (quotations and citation omitted). Habeas relief can only be granted in one of two ways: if it is shown that the adjudication of the claim by the state court resulted "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or if the state court decision was based "on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

This is a demanding standard that has been described by the Supreme Court as being "intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings . . . of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods*, 135 S. Ct. at 1376 (quotation marks and citations omitted). What this means is that to succeed on a habeas claim the petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Criminal defendants are entitled to a fair trial but not a perfect one. *Rose v. Clark*, 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than

incorrect or erroneous; it must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks omitted).

With these standards in mind I will now finally turn to the difficult claims raised by Hoglund that have not been procedurally defaulted.

1.  Failure to Object to Hearsay and for Lack of Foundation to a Hearsay Exception

The first issue relates to the admissibility of the testimony of the three expert witnesses who were allowed to hit the stand and parrot for the jury what the victim had told them. The State argued that these were statements made for the purpose of obtaining medical treatment and thus were admissible as exceptions to the hearsay rule under Indiana Rule of Evidence 804(4). Hoglund claims that the State court made an objectively unreasonable determination that trial counsel's failure to object to testimony on the basis of hearsay did not prejudice him. Relatedly, Hoglund argues that the basis for the admission of the hearsay under an exception to the rule was improper and that his lawyer was ineffective for failing to recognize that point and argue it appropriately. (ECF 20-18 at 13-14.)

To prevail on a claim of ineffective assistance of counsel, Hoglund had to show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). The test for prejudice is whether there

was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id*. In assessing prejudice under *Strickland*, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. On habeas review, the standard is even more stringent —"[the] inquiry is now whether the state court unreasonably applied *Strickland* . . . ." *McNary v. Lemke*, 708 F.3d 905, 914 (7th Cir. 2013). "Given this high standard, even 'egregious' failures of counsel do not always warrant relief." *Id.*

Just like the federal rules, the Indiana Rules of Evidence provide an exception to the general rule against hearsay for statements made for medical diagnosis or treatment. Ind. R. Evid. 803(4). For the exception to apply, "the declarant must subjectively believe that he was making the statement for the purpose of receiving medical diagnosis or treatment." *McClain v. State*, 675 N.E.2d 329, 331 (Ind. 1996). "Where that inference is not obvious, as in [a] case involving a young child brought to treatment by someone else, there must be evidence that the declarant understood the professional's role in order to trigger the motivation to provide truthful information." *Id.* The evidence should show that the declarant understood that she was speaking for the purpose of obtaining a diagnosis or receiving treatment. *Id.*

At trial, the victim, then twelve years old, testified about her abusive relationship with her father, the defendant. (Tr. 23-36.) Carol Butler is a pediatrician who performed a medical examination following the initial report to law enforcement. Dr. Butler saw

A.H. on one occasion and she did it at the request of the Department of Child Services and the Wells County Sheriff's Department. (Tr. 75-77). The exam occurred on March 16, 2006, shortly after the report of abuse. Christine Shestak, a mental health counselor, saw A.H. on two occasions, and she saw her in January 2007 to help her in "managing the anxiety that she was experiencing as the trial approached." (Tr. 119). During their testimony, these expert witnesses each recounted the victim's narrative that took place during an examination. (Tr. 77-79, 123-29.)

Trial counsel objected to the testimony on the basis of hearsay, which the court overruled. What trial counsel failed to do was effectively follow up the objection with an argument that the hearsay exception that the state was relying on— Rule 804(4) — may not have applied in this case. (Tr. 77, 123, 127.) Instead, trial counsel essentially conceded by saying "I understand the exception" referring to the exception for hearsay statements made to medical providers for purposes of receiving medical care. (Tr. 123.)

Amanda Mayle, a clinical psychologist who examined the victim to assess her ability to testify at trial, also offered testimony at trial. She was the third expert who was allowed to testify to what A.H. had told her. (Tr. 179.) Mayle saw A.H. on one occasion — July, 8, 2009. She candidly admitted that the reason she saw A.H. was at the direction of the Wells County Prosecutor's Office. (Tr. 177). Her task was to "assess her emotional stability and her ability to testify." (Tr. 177). Perhaps knowing that his objection would in all likelihood be overruled — after all, his earlier objections to

similar testimony from Butler and Shestak were overruled — trial counsel did not object to Ms. Mayle's testimony on the basis of hearsay. (Tr. 177).

At the post-conviction relief stage, the Court of Appeals of Indiana found that trial counsel's failure to object on the basis of hearsay and lack of foundation constituted deficient performance. (ECF 20-17 at 10-13.) However, the appellate court found that the objectionable testimony did not prejudice Hoglund and was merely cumulative because it mirrored the victim's testimony. *Id.*

I agree with the Court of Appeals of Indiana that counsel was ineffective for failing to object to the hearsay testimony. What's more, when he did object he should have been better prepared to articulate why the exception to the hearsay rule for statements made to a medical provider was inapplicable in this case. It seems from the record that the victim met with two of three medical witnesses not for the purpose of obtaining treatment or a diagnosis but rather for the purpose of prosecuting Hoglund. This suggests that an objection for lack of foundation to the medical hearsay exception under Rule 804(4) would have been sustained if properly articulated.

On the issue of whether Hoglund was prejudiced by counsel's failure, it is a close question. For starters, after reviewing the trial testimony, I agree that the hearsay testimony from the medical providers parroting what the victim told them was similar to the victim's testimony at trial. So in one sense, the hearsay testimony was simply cumulative evidence. But this facile response ignores the practical realties of the courtroom. The victim in this case was 12 years old when she testified and was

13

recounting things that happened to her five years earlier.  Her testimony was *much* stronger when it was combined with the testimony of three expert witnesses all of whom said that she told them the same story. This unquestionably bolstered the credibility of the victim making her testimony much more believable. Considering that the prosecution's case primarily relied on the victim's testimony, a strong argument could be made that the outcome of the trial may very well have been different without this added boost to the victim's credibility.

Nevertheless, I also recognize that the victim's testimony was compelling with respect to the graphic nature of the conduct described and its consistency and detail. A reasonable jury could have convicted on the basis of this testimony alone. But there was more.  The statement that Hoglund gave to the police, although not a confession, was especially incriminating.  Recall that Hoglund told the detective that the reason his daughter was knowledgeable about the topic of male ejaculation was because she "walked in on him" while he was masturbating and in the process of ejaculating. The jurors likely looked askance at such statements. What's more, instead of simply denying when asked if his daughter had performed fellatio on him, he instead told the police that perhaps she did this to him when he was sleeping.  The jury likely viewed this as extremely incriminating — who would theorize such a thing? — and revealed Hoglund's true state of mind.  Finally, there was the testimony of Hoglund's ex-wife recounting an earlier episode where Hoglund was alleged to have been bathing with his then five year old daughter, A.H. In sum, the case against Hoglund was strong — not

overwhelming, but strong — even without the testimony of the three experts. So I cannot find that the state courts' determination that the error did not prejudice Hoglund was unreasonable.

Further, even if trial counsel had properly objected for lack of foundation to the Rule 803(4) hearsay exception, the prosecution may have been able to establish a foundation for at least one of the expert witnesses — the testimony of the pediatrician Dr. Butler for whom a strong argument could be made that she was actually treating A.H. In addition, it may well be that the testimony of the experts could have been admitted in any event as prior consistent statements of the victim to rebut a charge of recent fabrication. *See* Ind. R. Evid. 801(d)(1)(B). The victim's account of the events was undeniably challenged by the defense, and this may have opened the door to the prior consistent statements made by the victim to the three experts. This is another reason to doubt whether there was actual prejudice to Hoglund. In other words, the statements from the experts may have been wrongly admitted into evidence, but they could have been admitted anyway under a different theory.

All of which is to say that I cannot say the state court's determination that there was no prejudice was *unreasonable* under the stringent AEDPA standards that govern this review. On these bases I conclude that the State court's determination was not objectively unreasonable. Hoglund's claim that his trial counsel was ineffective for not objecting on the basis of hearsay and lack of foundation is not a basis for habeas relief.

<u>Admission of Vouching Testimony</u>

The next issue also concerns the testimony of the same three expert witnesses and their impermissible vouching for the victim. Hoglund claims that the State court made an objectively unreasonable determination that trial counsel's failure to continuously object to testimony that served to vouch for the victim's credibility and failure to request a mistrial in response to direct and overt vouching testimony did not constitute deficient performance. He also claims that the admission of vouching testimony violated his due process right to a fundamentally fair trial. "To be of constitutional import, an erroneous evidentiary ruling must be so prejudicial that it compromises the petitioner's due process right to a fundamentally fair trial." *Howard*, 185 F.3d at, 723–24. "This means that the error must have produced a significant likelihood that an innocent person has been convicted." *Id.*

The vouching claim in this case is both convoluted and unique. It involves a State evidentiary rule that was changed as a result of Hoglund's direct appeal, but from which Hoglund derived no benefit. To fully understand what took place, it is necessary to review the status of Indiana law regarding vouching testimony as it stood at the time of Hoglund's trial, which occurred in 2010. At that time, for cases in which a child was called to testify about sexual conduct, Indiana law allowed "some accrediting of the child witness in the form of opinions from parents, teachers, and others having adequate experience with the child, that the child is not prone to exaggerate or fantasize about sexual matters." *Lawrence v. State*, 464 N.E.2d 923, 925 (Ind. 1984). However,

Indiana did not allow the vouching testimony to "take the direct form of 'I believe the child's story', or 'In my opinion the child is telling the truth.'" *Id.* Though Indiana later adopted the Indiana Rules of Evidence, which included a rule to exclude opinion testimony on "the truth or falsity of allegations" or on "whether a witness has testified truthfully," Ind. R. Evid. 704(b), the State courts nonetheless continued to interpret *Lawrence* as an exception to the Indiana Rules of Evidence. *See Rose v. State*, 846 N.E.2d 363, 367 (Ind. Ct. App. 2006); *Krumm v. State*, 793 N.E.2d 1170, 1178-79 (Ind. Ct. App. 2003).

Against this backdrop, at trial, as discussed above, the prosecution elicited testimony from the three medical witnesses. Not only were the three experts allowed to tell the jury what A.H. had told them, as discussed in the prior section, something much more odious occurred. Each was allowed to get on the stand and essentially tell the jury that they believed A.H.'s story; they were allowed to vouch for her testimony. For example, the prosecution asked Dr. Butler whether she believed that the victim was "prone to exaggerate or fabricate sexual matters." (Trial Tr. 80.) Trial counsel objected, arguing that Dr. Butler was not qualified to answer the question due to her limited interaction with the victim, and the trial court overruled the objection. (Tr. at 80-82.)

The trial was replete with vouching testimony from all three experts, and in order to appreciate the weight of this evidence, I will quote it at length:

> **Prosecutor:** Dr. Butler, in the time you dealt with [the victim] and interviewed her and examined her, based upon that experience and your training and experience as a doctor and pediatrician, do you believe that [the victim] was, is prone to exaggerate or fantasize in sexual matters?

**Defense counsel:** And before she answers can I have a continuing objection Your Honor just to make sure for the record.

**Court:** Objection overruled.

**Dr. Butler:** When it comes to sexual, speaking about sexual matters, I may answer this in more in generality in the specific in a sense that an eight year old is not going to come, I don't believe an eight year old would come into a physician's office to speak about sexual fantasies or made up stories. For almost anybody speaking about sexual issues even as an adult in a physician's office is an uncomfortable position and for an eight year old to come in and speak about that in my opinion is not usually a fantasy or a story. To be seven or eight and to have this knowledge is also not usual. So I believe that what [the victim] told me was the truth because of her age and because people don't –

**Defense Counsel:** Again, I'm going to object as far as, a running objection Your Honor as far as what she is saying is the truth. That's the decision for the jury to make, not, or the fact finder, not for her to decide, this is not an opinion that she has the ability to make at this point as to whether or not a young witness on the stand is telling the truth. Again, a continuing objection as to any opinion as to whether or not she is telling the truth.

* * *

**Court:** Ladies and gentlemen of the jury, I'm going to instruct you that her comment regarding her opinion regarding whether she was truthful or not is stricken from the record and you should treat that as if it had never been said.

(Tr. at 82-83.)

With respect to Christine Shestak's testimony, the record indicates as follows:

**Prosecutor:** During and based on your contacts with her do you perceive any indication that she made or fabricated this story –-

**Defense Counsel:** Again, Your Honor, for the record I'm going to object as far as the form of the question, as far as fabrication. I think that's something that wouldn't be within the realm of the counselor to make a determination of whether or not she is telling the truth. She can take a history from a young lady as to what she believes happened, but she

certainly can't make a determination as to whether or not she is telling the truth or not.

**Court:** Had you finished the question?

**Prosecutor:** I had not finished the question.

**Court:** Complete the question and then we'll address the objection.

**Prosecutor:** Ms. Shestak, based on your contacts with the victim, did you perceive any indication that she may have fabricated the story about her abuse out of some need?

**Defense Counsel:** Again Your Honor, the same objection I just stated seconds earlier with regard, I don't think she has the ability to make a determination as to whether or not she is telling the truth or not telling the truth. She has the ability to take a history and go off of that history that she is being provided, but I certainly don't think she has the ability to make a determination as to whether or not she is telling the truth and would object to any opinion rendered by this lady regarding that aspect of this question.

**Court:** Objection overruled.

**Prosecutor:** You may answer now.

**Shestak:** Her statements were congruent with her experience and I did not see anything that indicated that she had any need to tell this story.

* * *

**Prosecutor:** Did you learn anything from your interviews with the child that, which would be inconsistent with [the victim] being the victim of a sexual abuse?

**Shestak:** No, I did not.

* * *

**Prosecutor:** And generally, not with regard to [the victim], generally do you have an opinion on the credibility of child sexual abuse victims as a whole?

19

**Shestak:** In general the research demonstrates and my clinical experience upholds that the majority of children who talk about having been sexually abused are giving truthful details and that it has happened to them.

(Tr. at 119-20, 133-34.)

With respect to Amanda Mayle's testimony, the record indicates as follows:

**Prosecutor:** Do you perceive any indication that she may have fabricated the story --

**Defense Counsel:** I again Your Honor for record purposes object to her making any type of opinion with regard to whether or not she has fabricated this matter. Again, that's for the fact finder to determine whether or not she has fabricated this matter or telling the truth. If this lady had the ability to be able to determine whether or not a person that comes in to see her has the ability to tell the truth I think she would make a lot of money as far as being able to do this and be able to come into Court and testify. There is no lie detector test that has the ability to do that, that is admissible in Court and there is no device that I'm aware of that has the ability to determine whether or not a person is or is not telling the truth. So whether or not she is fabricating something I don't believe she has that ability based on her qualifications to give an opinion as to whether or not she was fabricating what was told to her.

**Court:** Objection overruled.

\* \* \*

**Court:** Why don't you ask the question in its total again.

**Prosecutor:** Dr. Mayle, do you perceive any indication that [the victim] may have fabricated this story of her abuse out of some need?

**Mayle:** No.

\* \* \*

**Prosecutor:** Do you believe that, in your opinion, do you believe that [the victim] is prone to exaggerate or fantasize in sexual matters?

**Mayle:** I saw no indication of that.

20

**Prosecutor:** Did you learn anything about [the victim] which you believe would be inconsistent with the victim being a victim of sexual abuse?

**Mayle:** No.

**Prosecutor:** Do you have an opinion on the credibility of child abuse victims as a whole?

**Mayle:** Yes.

**Prosecutor:** What is it?

**Mayle:** I believe any child that makes any accusations should be believed initially, it's not up to them to prove that it happened, but rather that they be believed and helped through the process.

(Tr. at 180-81.)

On Hoglund's direct appeal, the Indiana Supreme Court overruled *Lawrence* and held that vouching testimony, even in the context of sexual abuse cases, was no longer admissible under the Indiana Rules of Evidence. (ECF 20-9 at 9.) But surprisingly, the Court affirmed the judgment of the trial court on the basis that the admission of the vouching testimony was harmless error. *Id.* at 13. In reaching this conclusion, the Court considered the victim's compelling testimony. *Id.* The Court also reasoned that, even though the trial court improperly admitted vouching testimony, it was harmless error because the testimony was cumulative of other vouching testimony admitted without objection. *Id.* The State court noted that trial counsel's objections to Shestak and Mayle's vouching testimony were not continuing and that trial counsel did not reassert the objections when the focus of testimony returned to the victim's credibility. *Id.*

At the post-conviction relief stage, Hoglund argued that trial counsel was ineffective for failing to continuously object to the testimony of Amanda Mayle and Christine Shestak about the victim's credibility and for failing to request a mistrial after Dr. Carol Butler testified that the victim was telling the truth. (ECF 20-18 at 11-13.) The appellate court reasoned that trial counsel's performance was not deficient because, at the time of trial, the change in the evidentiary rule regarding vouching testimony had not yet occurred and because a mistrial was not warranted in light of the trial court's prompt admonition to the jury. (ECF 20-17 at 8-9.)

To summarize: on direct appeal, Hoglund was told that the trial court error was harmless due to trial counsel's mistakes; but, on post-conviction appeal, Hoglund was told that trial counsel's performance was not deficient; and neither decision discussed whether the vouching testimony in its entirety was prejudicial. Though such circumstances do not necessarily violate due process, here, I am concerned that the direct appeal decision did not consider the context of trial counsel's inaction. Specifically, the reasoning of the Indiana Supreme Court suggests that trial counsel should have made repeated objections even after the trial court indicated that such objections would be futile. That approach entirely ignores the pragmatics of the courtroom. As a practical matter, trial counsel must weigh the consequences of how such objections appear to the judge and jury and balance that against preserving the issue for appeal. Considering that the State courts had followed *Lawrence* for more than 25 years at the time of the trial, the balance weighed heavily in favor of not objecting --

which the State court acknowledged at the post-conviction stage by finding that trial counsel did not perform deficiently. At bottom, it is troubling that the Indiana Supreme Court denied Hoglund a new trial because trial counsel did not satisfy the unreasonable expectation of repeatedly making what would have been, at that time, entirely futile objections.

Nevertheless, I find that neither of these claims presents a basis for habeas relief. Even though I strongly question the State court's harmless error analysis, the issue before me is whether the vouching testimony produced a significant likelihood that an innocent person has been convicted. *See Howard*, 185 F.3d at 723–24. I simply cannot come to that conclusion. First, the victim's testimony was extremely compelling. Second, as detailed above, the defendant's statement to the police was damning evidence indeed. The jury was likely repulsed by Hoglund's claim that his daughter knew about male ejaculation because she "walked in on him" while he was in the process of ejaculating. And when he was asked if his daughter had performed fellatio on him, he said "not unless he . . . Was passed out sleeping and (she) took it upon herself." (Tr. 152.) He then offered to the police that maybe it happened when he was "fucked up." (Tr. 152.) I think it is fair to say that the jury likely viewed this as extremely incriminating. As I found above, in my view, the case against Hoglund was strong even without the testimony of the three experts. So I cannot find that the state courts' determination that the error did not prejudice Hoglund was unreasonable.

<u>Certificate of Appealability</u>

Pursuant to Section 2254 Habeas Corpus Rule 11, I must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

I grant a certificate of appealability on the following issues: 1) whether trial counsel's failure to properly object to the hearsay statements from the three experts relaying what the victim had told them constitutes ineffective assistance of counsel; 2) whether the admission of vouching testimony was a due process violation; and 3) whether the due process claim on the vouching testimony was procedurally defaulted.

For these reasons, the court DENIES the habeas corpus petition; GRANTS a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and DIRECTS the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED on August 22, 2018.

/s/ Philip P. Simon
Judge
United States District Court